PUTNAM and HERRICK, JJ., concurred.

Judgment affirmed, with costs.

---

IN THE MATTER OF THE PETITION OF JOHN BRIDGFORD AND OTHERS TO VACATE AN ASSESSMENT FOR THE EXPENSE OF EXCAVATING, FILLING, FORMING AND GRADING MYRTLE AVENUE FROM THE WEST LINE OF LAKE AVENUE TO THE EAST LINE OF ONTARIO STREET IN THE CITY OF ALBANY, NEW YORK.

*Assessments in the city of Albany — an injunction not proper in a special proceeding, to stay their collection — effect of a statute forbidding an equitable action for such a purpose—the contractor is a proper party to the proceeding to vacate the assessment— Laws of 1883, chap. 298; 1887, chap. 242, secs. 11, 12.*

In a special proceeding, taken by persons assessed to restrain a city from collecting an assessment, it appeared that the city charter provided that no assessment should be void or should be vacated for any error, illegality or irregularity, in the proceedings or in the letting of the contract, unless the party objecting had filed objections with the clerk of the board of contract and apportionment within ten days after the letting of the contract for the work. It was also provided that no assessment should be void, or be vacated for defective performance of the work by the contractor, unless during the progress of the work an affidavit stating the defects was filed with the same clerk.

The charter also provided that if, in the proceedings relative to any assessment, or in proceedings to collect it, any fraud or defect in the work, or substantial error was alleged to exist or to have been committed, the party aggrieved might, within twenty days after the confirmation of the assessment, apply to the courts for relief.

No affidavit pointing out defective work done by the contractor was filed during the progress of the work.

*Held,* that this was essential, and not having been filed the court had no power to review the performance of the work by the contractor, and that the petitioners could not take advantage of any errors, defects or irregularity which occurred before such confirmation.

The charter contained the following provision: "And hereafter no suit or action in the nature of a bill in equity, or otherwise, shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title arising from any assessment hereafter made. * * * Owners of property shall hereafter, in proceedings to reduce or vacate or stay payment of assessments, be confined to the form of proceeding in this title mentioned."

*Held,* that the effect of this was to deprive the court of its power to entertain an ordinary action in equity, and that a temporary injunction to stay the collection of the assessment was improperly granted.

That such an injunction could not be supported by invoking through an order the equitable powers of the court.

That the "stay" mentioned in the charter was not an *ad interim* stay, but related to the final judgment.

That, treating the order as a mere exercise of equitable power, it could not be supported since the petitioners had an adequate remedy at law.

That no irreparable injury could result to them from the enforcement of the assessment, for if the assessment should finally be decided to be void the parties aggrieved might recover at law their payments made under duress of law, and for the further reason that, under the charter, the petitioners, if unsuccessful in this proceeding, had a right to redeem within two years after the sale.

That the injunction order could not be supported, as one made to prevent a multiplicity of suits, there being no proper allegations to that end in the petition.

That the rule that the appellate court will not interfere where a matter of discretion is concerned, had no application to a case where the injunction was forbidden by statute

That the contractor, who looked only to this assessment and its collection for payment, was a proper and necessary party to the proceeding.

APPEAL by the city of Albany from an order of the Supreme Court, entered in the office of the clerk of Albany county on the 20th day of February, 1892, restraining it from enforcing or collecting certain assessments levied upon the real estate of the petitioners until the final determination of the above-entitled proceeding, which

was taken to vacate and set aside an assessment for the expenses of excavating, filling, forming and grading Myrtle avenue from the west line of Lake avenue to the east line of Ontario street in said city.

*John A. Delehanty*, for the city.

*Albert Hessberg*, for the contractor.

*Alden Chester*, *John T. McDonough* and *Henry E. Stern*, for the petitioners, respondents.

MAYHAM, P. J.:

This is an appeal from the order of a Special Term of this court restraining and enjoining the city of Albany and its officers from enforcing and collecting and from attempting to enforce and collect an assessment levied upon the real estate of petitioners for street improvements in said city.

The case shows that on the 16th day of September, 1889, a petition was presented to the common council of the city of Albany praying for the passage of a law or ordinance authorizing the excavating, filling, forming and grading of Myrtle avenue in said city, from the west line of Lake avenue to the east line of Ontario street, and that in pursuance of such petition the common council did, on the 8th day of November, 1889, pass such law or ordinance authorizing such work, two-thirds of all the members elected to the common council voting in favor thereof, and that such law or ordinance was duly approved by the mayor; that thereafter the board of contract and apportionment of the city passed a resolution directing that notice be given that sealed proposals would be received for the performance of the work authorized by such ordinance.

The case also shows that such bids were at the time designated in said notice received, and the contract awarded to one Jacob Holler on the 13th of January, 1890, and that the cost of the work performed under such contract amounted, in the aggregate, to the sum of $8,799.30.

On the 21st of September, 1891, the board of contract and apportionment, by an assessment confirmed on that day, apportioned and assessed the whole of that sum upon and among all the houses and lots and vacant lots intended to be benefited by said work in propor-

tion to the advantage which each was deemed, by said board, to be benefited thereby within the district fixed by that board.

On the 8th of October, 1891, the petitioners commenced their proceedings by the service upon the contractor and the corporation counsel of an order to show cause on the 10th of October, 1891, at which time the proceedings were adjourned until the 29th of December, 1891, when an order of reference was entered to take proof and report the same to the court.

On the 29th of January, 1892, no further steps having in the meantime been taken by the petitioner on such reference, the city chamberlain caused the property of the petitioners, described in the petition and covered by such assessment, to be advertised for sale under the assessment. The petitioners thereupon made a motion at Special Term of this court, on the 6th day of February, 1892, for an order restraining the city from selling this property under said assessment until the final hearing and determination of this proceeding, which was granted, and from that order the city and contractor appeals.

The appellants insist that the petitioners cannot, after the city has proceeded and incurred liabilities under the assessment, not having filed any objection to any of the proceedings, now restrain, in this proceeding, the collection of this assessment. Section 11 of chapter 242 of the Laws of 1887, which amends section XI of chapter 298 of the Laws of 1883, provides as follows:

"If, in the proceedings relative to any assessment or assessments for local improvements in the city of Albany or in the proceedings to collect the same, any fraud or defect in the work or substantial error shall be alleged to exist or have been committed, the party aggrieved thereby may, within twenty days after the confirmation of the assessment and apportionment, apply to have the assessment vacated or reduced, or both, to a judge of the Supreme Court, at Special Term, or at chambers, or to the county judge, who shall thereupon, upon due notice to the counsel of the corporation of said city and to the contractor and his sureties, or any other person, if they or either of them be proper parties, proceed forthwith to hear the proofs and allegations of the parties."

By section 12 of chapter 242 of the Laws of 1887, section 4 was added to title XI of chapter 298 of the Laws of 1883, as follows:

"And it is further provided that no assessment that may be hereafter made shall be void or shall be vacated, nor the sale of property therefor be declared illegal, or the deed or certificate of conveyance therefor be adjudged invalid or illegal, or any moneys paid on account of or because of said assessment be recovered back or refunded, because of any error, illegality or irregularity in any of the proceedings in relation to the work or improvement for which such assessment is made prior to the commencement of the work, including the letting of the contract for said work, unless some party objecting thereto shall have filed his objection or objections with the clerk of the board of contract and apportionment within ten days after the letting of the contract for said work, stating the error, illegality or irregularity complained of, together with his address."

This section then provides for a hearing before the board of contract and apportionment and that their decision shall be final, unless proceedings are instituted within ten days after the filing of said decision to review such decision. Section 1 of title XI of chapter 298 of the Laws of 1883 provides that "no assessment that may hereafter be levied shall be void or shall be vacated by any court, because of a failure on the part of the contractor to comply in the execution of the work with all of the requirements of law or the contract in respect thereto," unless during the progress of the work an affidavit, stating what the defects are, shall be filed with the clerk of the board of contract and apportionment.

No such affidavit as is contemplated by this section seems to have been filed, and, therefore, the court cannot, in these proceedings, pass upon the manner of the performance of the contract by the contractor, as questions upon that subject can only be raised in the manner pointed out by section 1 of title XI of chapter 298 of the Laws of 1883.

The undisputed evidence shows that neither during the advertisement for proposals for the letting of the contract for the performance of the work, nor at the time of awarding of the contract, and making of the same, nor at any time during the performance of the work done thereunder, nor until after the same was accepted by the street commissioner, was any objection made by or on behalf of the petitioners, or any other person as to any of the steps or proceedings taken by the city authorities, under the provisions of the acts of

1883 and 1887, above quoted, and the petitioners cannot, without having complied with the provisions of those acts, take advantage of any alleged irregularity or defect in the proceedings prior to the acceptance of such work by the street commissioner.

The only question left for consideration on this motion is whether the court can restrain the collection of this tax, after all the liabilities have been incurred without objection, and the tax to meet such liabilities has been assessed by the proper authorities and is in process of collection?

It is clear that an ordinary action to restrain the collection of this tax would not lie. But the legislature has provided a proceeding under which the rights of the parties may be effectually preserved, provided the persons aggrieved proceed promptly and in accordance with the statutory requirements; and public policy requires that they should seek redress under the statute or be remediless.

The petitioners having neglected to file the statutory objections to the making of the contract and the performance by the contractor, the remaining question for discussion on this appeal is as to the regularity and legality of the assessments for payment of this work. Has the court the power, under the charter by virtue of which this municipality assumes to levy this tax, to restrain the city from the collection of the same pending these proceedings?

If such power exists, it must be found in the statute, either by virtue of its direct provisions or by fair implication from its provisions. Section 3 of title XI of chapter 298 of the Laws of 1883 provides as follows: "And hereafter no suit or action in the nature of a bill in equity, or otherwise, shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title arising from any assessment hereafter made. * * * Owners of property shall hereafter, in proceedings to reduce or vacate or stay payment of assessment, be confined to the form of proceeding in this title mentioned."

This provision of the statute is almost identical with chapter 410 of the Laws of 1882, known as the "New York Consolidation Act," and the question of the power of the court, under that act, to stay proceedings on an assessment until the final determination of an action prosecuted to test the validity of an assessment levied for street improvements, was denied. (*Sixth Avenue R. R. Co.* v.

*Mayor, etc., of the City of New York* (17 N. Y. Supp., 903). In this case this court, at General Term in the First Department, uses this language: "There would be, ordinarily, jurisdiction to restrain the sale of the plaintiff's property under an illegal assessment and to prevent the creating of a cloud upon the title." Section 897 of the Consolidation Act, however, expressly provides that "no suit or action in the nature of a bill in equity, or otherwise, shall be commenced for the vacation of any assessment in said city, or to remove a cloud upon title, but owners of property shall be confined to their remedies in such cases to the proceedings under this title. This provision was held in *Mayer* v. *Mayor, etc.* (101 N. Y., 284), to be unqualified and to apply to every class of assessments.

By that section, therefore, the power of this court to grant injunctions in cases of this character was absolutely taken away, and although the plaintiff may, on its papers, make out a case which, in the absence of that section, would entitle it to relief, we are of opinion that the plain provisions of the Consolidation Act require us to hold that the action cannot be maintained."

It is true that the action from which we have quoted was an ordinary suit in equity to obtain a perpetual injunction, and such action was clearly prohibited by the section of the statute quoted in the opinion. But it will be observed that the statute which furnishes this special proceeding and takes away the power of the court to entertain an ordinary action in equity, for the relief demanded by the petitioners, makes no direct provision for an *ad interim* stay pending the prosecution of this statutory remedy.

It is true that the section which prohibits a suit in equity provides that "owners of property shall hereafter, in proceedings to reduce or vacate or stay payment of assessments, be confined to the form of proceeding in this title mentioned." But the stay provided for in this paragraph is not described as an intermediate stay tending to obstruct the progress of the municipal authorities before final judgment in favor of the petitioner in the proceedings, but is placed in the same category with the reduction or vacation of assessment, the result of the final determination of this proceeding. It is not, therefore, clear that the words "stay of proceedings," used in the statute, relates to an intermediate stay, and that language of the statute held

to relate to the final order or judgment is more in harmony with the general theory of the law relating to the taxing power than it would be if held to relate to an *ad interim* stay.

The general policy of the law is to enable taxing officers to pro_ ceed without obstruction, when they have acquired jurisdiction of the person and subject-matter, and their acts are not assailed for fraud, in the collection of the revenues necessary for the administration of public affairs.

In *Rome, Watertown and Ogdensburg Railroad Company* v. *Smith* (39 Hun, 332), VAN BRUNT, J., in delivering the opinion of the court, says: " If they (the plaintiffs) are compelled to pay this tax, and it should finally be adjudged, under proceedings now pending (which was a *certiorari*), to be erroneous, ample means of restitution are provided by the statute. * * * Public policy requires that the collection of the taxes, adjudged by the proper authorities to be necessary for the maintenance of the local and State government, should not be prevented or interfered with by injunction suits in equity to test the legality of assessments when there is any other possible redress. In this case other legal redress exists, and proceedings have been instituted to enforce it." While this opinion was pronounced in a case where the payment of a tax was sought to be restrained pending a proceeding by *certiorari*, under chapter 269 of the Laws of 1880, it would seem to apply with equal reason to the case at bar. Under that statute it was provided that a writ of *certiorari* should not operate as a stay of proceedings or stay the payment of the assessment. It is true that no express prohibition against a stay is found in the Albany charter. It is also true that while by that statute the court is shorn of its ordinary equitable powers, it is not clothed with any express power to grant the stay asked for on this proceeding. But the learned counsel for the petitioners invokes the exercise of equitable powers by this court to grant a stay in these proceedings, although its powers as a court of equity to entertain a proceeding by injunction are suspended by the provisions of the charter.

This, we think, would be an evasion of the spirit, if not a violation of the letter, of the statute. It can hardly be maintained that while the legislature for a wise purpose took away from parties aggrieved the right to the protection which an equitable action by

injunction is presumed to afford, it at the same time left with the court the right to grant, by order of injunction, the stay denied by action. But if we treat this order as an injunction order, to be granted in the exercise of the equitable powers of the court, we must then apply to this case the ordinary rules for invoking equitable jurisdiction, and no rule in equity is more familiar than that a court of equity will not interfere when a party has an adequate remedy at law. It can hardly be urged that the collection of this tax will result in an irreparable injury to the petitioners.

If the tax is illegal and improperly assessed, payment under the compulsory process of the chamberlain will be involuntary or coerced payment, and the tax can be recovered back. (*Peyser* v. *The Mayor of New York*, 70 N. Y., 497; *Bruecher* v. *Port Chester*, 101 id., 240; *Western R. R. Co.* v. *Nolan*, 48 id., 516; *Susquehanna Bank* v. *Supervisors of Broome County*, 25 id., 312; *Zink* v. *McManus*, 121 id., 264.)

If it be held, finally, that the petitioners, by reason of laches in making objections, have waived their right to redress, then, within two years after the sale of the property, the petitioners may tender the bid and interest, and redeem the property from the forfeiture of the sale. Nor do we see that the petition discloses in what way this proceeding and injunction will prevent a multiplicity of suits.

It is not alleged that the numerous parties contemplate bringing actions at law, or in any other manner intend to prosecute actions against the city for or on account of these assessments. (*Bouton* v. *Brooklyn*, 15 Barb., 387; *Blake* v. *Brooklyn*, 26 id., 301; *Heywood* v. *Buffalo*, 14 N. Y., 541; *Cole* v. *New York*, 31 id., 99.) But if this were otherwise, it would not justify the granting of an injunction when that proceeding is, as we have seen, forbidden by the statute. The petitioners urge that the granting of a temporary injunction is a matter resting in the discretion of the court, and that the court having, at Special Term, exercised that discretion, this court should not interfere. But this rule does not apply when it appears, as in this case, that an injunction is prohibited by statute, and that no final injunction can, in any event, be granted in the proceeding. (*Strasser* v. *Moonelis*, 108 N. Y., 611.) But if an injunction could, in a proper case, issue to restrain the collection of a tax of this character, we think that the allegation in the peti-

tion is insufficient to raise any legal presumption against the validity of this tax to justify the granting of an injunction in this case when the work has been done and accepted without objection on the part of the petitioners, especially when all of the material facts are put in issue by the answering affidavits on the part of the defendant.

We are also of the opinion that the contractor whose interests were to be affected by these proceedings was a necessary and proper party to the record. He could look only to this assessment and the collection of this tax for his compensation, and when it was proposed to cut off his source of supply, he had a right to be in court to defend his interest.

The order should be reversed and the temporary injunction vacated, with costs.

PUTNAM, J., concurred; HERRICK, J., not acting.

Order reversed and temporary injunction vacated, with costs and printing disbursements.