OPINION OF THE COURT
Thomas E. Mercure, J.
Petitioner commenced the within proceeding pursuant to Real Property Tax Law article 7 to review and annul a determination of the respondent assessor to deny petitioner an exemption on the assessment roll of the Town of North Elba Public Parks and Playgrounds District. Petitioner has moved and respondents have°cross-moved for summary judgment.
The factual background is undisputed. The Legislature enacted a law (L 1928, ch 477), effective March 21, 1928, creating the subject park district, apparently in anticipation of the *880 1932 Olympic winter games at Lake Placid. The law provided, in section 5 thereof, that "[t]he town board may revise and amend the budget as submitted and shall annually levy and assess the amount thereof upon the taxable property of the district in the same manner as the town taxes therein” (emphasis supplied). Although not specifically stated in the papers, it appears that the district has continuously existed and assessed and levied taxes in accordance with the enabling legislation in all years since enactment thereof. The parties are in agreement that the park district assessment constitutes a "special ad valorem levy” as defined in RPTL 102 (14) a position with which I also agree.
Petitioner, a not-for-profit corporation constituting a Roman Catholic order of nuns, acquired the subject realty, consisting of approximately 2.8 acres of land located on the shore of Lake Placid, in the late 1960’s. The corporation has at all relevant times been granted tax-exempt status by the Internal Revenue Service, pursuant to Internal Revenue Code § 501 (c) (3) (26 USC) and, in fact, by the respondent assessor, pursuant to RPTL 420-a. No real property taxes or special ad valorem levies were imposed against the realty prior to 1984. On January 26, 1984, the petitioner received a tax bill containing a charge in the amount of $870.23 for "park”. No park assessment had been imposed against petitioner’s realty prior to 1984, and it is undisputed that petitioner was given no specific notice of the fact that the assessor did not intend to grant an exemption on the district assessment roll for 1983 and subsequent years.
Following receipt of the tax bill, petitioner, through its attorneys, attempted to resolve the matter with the respondent assessor. These efforts failed, and on June 19, 1984, petitioner filed a "complaint on real property assessment for 1984” with the respondent Board of Assessment Review. The complaint was accepted for filing and considered by the Board, and the request for exemption contained therein was denied by written notice on or about June 30, 1985. The said notice contained the following language at the foot thereof: "If you are dissatisfied with the determination of the Board of Assessment Review, you may seek judicial review of your assessment pursuant to article seven of the Real Property Tax Law. If you are the owner of a one, two or three family residential structure and reside at such residence, you may seek small claims assessment review pursuant to Title 1-A of Article 7 of the Real Property Tax Law. Petitions for judicial review must *881 be filed within 30 days after the final completion and filing of the assessment roll containing the assessment. An Assessment Roll is not considered finally completed until the last day set by law for the filing of such Assessment Roll (August 1st), or until notice of such filing is published, whichever is later.”
Consistent with said notice, the within proceeding was commenced August 29, 1984. The amended answer of the respondents asserts three affirmative defenses, as follows: (1) the park district assessment was made pursuant to Town Law article 15 and not pursuant to the RPTL; (2) petitioner failed to comply with Town Law § 246 in commencing a CPLR article 78 proceeding within 30 days, and petitioner failed to make any objection at the hearings conducted under Town Law article 15; and (3) petitioner is not exempt from the special assessment for this park district. The same contentions are raised by the respondents in opposition to the motion and in support of the cross motion. Further, respondents assert that questions of fact exist which preclude summary judgment even if the legal analysis of petitioner is accepted by the court.
There is no question that Town Law article 15 provides for financing of district and special improvements and that Town Law § 246 provides for review of a board’s decision or action by CPLR article 78 proceeding "within 30 days from the date of such decision or action”. Further, Town Law § 239 provides that an action or proceeding to review the district assessment roll must be commenced within 30 days after the final assessment roll shall have been affirmed. There is considerable question, however, whether these provisions have any relevance to the instant application. Town Law article 12, relative to establishment or extension of improvement districts, and article 15, relative to financing of improvements, were both enacted subsequent to creation of the subject park district by the Legislature. Town Law § 203, originally enacted as a portion of Laws of 1932 (ch 634), provides as follows: "Districts now existing shall continue as now established and shall have all the powers and be governed in the same manner as provided in this act for districts established pursuant to the provisions of article twelve. In the event that any bonds shall have been issued by any town prior to the taking effect of this act, taxes or assessments shall be levied and collected for the payment of the principal and interest of said bonds as they become due pursuant to and in accordance with the statutes and practice relating to such matters in force immediately prior to the time this act takes effect” (emphasis supplied).
*882 The great majority of the provisions of Town Law article 15, including Town Law §§ 231, 234 through 242, 244, and 246, were enacted simultaneously with section 203 and were, in fact, part of the same act. The very clear import of section 203, and especially the portion emphasized above, is that these sections do not apply to the levy and collection of taxes and assessments in connection with preexisting districts. The question then becomes what law does apply. One need only look to the enabling legislation, and particularly the emphasized portion set forth on page 880 hereof, for an answer. Taxes and assessments are to be levied and assessed in the same manner as the town taxes, and, assumedly, the law governing levy and assessment of town taxes will apply equally to levy and assessment of the park district assessment. At the present time, that law is the Real Property Tax Law.
Further, it is felt that the provisions of the Town Law relative to preparation of a district assessment roll (§ 237), completion of the roll and a hearing thereon (§ 239), delivery of the roll to the collector and warrant for collection (§ 240), notice by collector and return of assessment roll (§ 241), correction of assessments (§ 244), and proceedings to review decision (§ 246) apply only to "special assessments”, defined in RPTL 102 (15) as "a charge imposed upon benefited real property in proportion to the benefit received by such property to defray the cost, including operation and maintenance, of a special district improvement or service or of a special improvement or service, but does not include a special ad valorem levy.” Authority for this proposition is found in Town Law § 237, which supplies initial authority for preparation of a district assessment roll and provides in pertinent part as follows: "It shall thereupon be the duty of the assessors, or the town board, if the town board shall so elect, to prepare an assessment roll which shall contain a description of each lot or parcel of land so that the same may be ascertained and identified; the names of the reputed owners thereof; the amount of benefit of said improvement which each such lot or parcel of land shall have received, and the amount assessed against each lot or parcel” (emphasis supplied).
The concept of special benefit to particular realty, the very basis for a special assessment, is irrelevant to and altogether inconsistent with a special ad valorem levy. It is logical and necessary to maintain a separate district assessment roll for a special district because the extent to which the improvement benefits a given parcel will not necessarily bear a close, if any, *883 relationship to the fair market or assessed value of the parcel on the town tax roll. In contrast, the very definition of a special ad valorem levy is founded upon the presumption that all realty within the district is equally benefited (RPTL 102 [14]). In that case, there is absolutely no reason to maintain a separate roll. Except to the extent that not all parcels on the town assessment roll will necessarily be located in the improvement district, the district roll and the town roll are one and the same. As stated by the respondent assessor in his affidavit in opposition to petitioner’s motion and in support of respondents’ motion for summary judgment: "Preparation of the assessment roll for the park district is done at the same time as the assessment roll for general town taxes is prepared. The same assessment roll is used and there is a specific entry on the roll for each parcel of property within the park district against which a park district charge will be levied. The assessment roll contains a description of each lot or parcel of land, the names of the reputed owners thereof, and (since the town uses an ad valorem levy) the value of each parcel or lot which will form the basis for the ultimate amount of the park district levy.” This procedure is entirely consistent with Town Law § 231-a, added in 1934, which makes specific provision for assessment, levy and collection of special ad valorem levies "in the same manner and at the same time as the annual tax for other town charges.”
The law will not be interpreted so as to require that which serves no purpose. As related to special ad valorem levies in improvement districts situate wholly within a town, to maintain separate assessment rolls, to have entirely separate hearings on the rolls (as opposed to a hearing on the district budget) and to have divergent methods of review of the respective rolls is senseless. It is also noted that RPTL 704 (1) provides that "[a]ny person claiming to be aggrieved by any assessment of real property upon any assessment roll may commence a proceeding under this article”. This language is very broad and unqualified. Based upon the foregoing, it is the court’s holding that the provisions of the Town Law, relied upon by respondents in support of their first two affirmative defenses, are inapplicable to the instant proceeding and that the provisions of the Real Property Tax Law, relied upon by petitioner, do apply.
Even were this not so, the result would be no different. The fact remains that the respondent assessor gave petitioner no notice of the change which he made in the taxable status of *884 the subject property. RPTL 510-a requires that an assessor give a property owner specific written notice of a change in the taxable status of a parcel from the status of wholly exempt to taxable in whole or in part. Of course, respondents’ response would be that Town Law article 15 and not the RPTL applies and that there is no such requirement in the Town Law. This response fails on two separate grounds (in addition to that already discussed). First, Town Law §244 requires notice to the owner of any "correction” of an assessment. To the extent that the assessor has determined that petitioner’s parcel is not exempt, he must also have determined that the prior exemption was incorrect, as it is clear that there was no change in ownership or use of the property such as to otherwise justify the denial of exemption in 1983. This being the case, the inclusion of the parcel on the 1983 roll as taxable constituted correction of the prior error. Second, regardless of the provision of the Town Law or the RPTL, due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of a potential forfeiture of their legal rights and afford them an opportunity to present their objections (see, Mullane v Central Hanover Trust Co., 339 US 306). When an assessor elects to change the status of realty from wholly exempt to wholly taxable, especially when the realty has never before been taxed, the publication of notice stating that the assessment roll has been prepared and filed will not suffice.
Accordingly, it is my determination that petitioner did not receive sufficient notice of the change in the taxable status of its property until receipt of the tax bill on January 26, 1984. Even then the limitations period did not begin, because both the Town Law and the RPTL provide for a grievance mechanism as a prerequisite to commencement of judicial review. Town Law § 246 requires attendance at a hearing and the making of objections; RPTL 706 (2) requires that a complaint be made in due time to the proper officers to correct such assessment.
Since, due to the failure of the assessor to give adequate notice, the time for challenge of the 1983 assessment roll and the hearing thereon had already passed, petitioner was in legal limbo. It had to fulfill the condition precedent to judicial review, but no mechanism existed for doing this, at least not with respect to the 1983 roll. Petitioner’s response to this predicament was to cover all bases. It attended the very next hearing on the district assessment roll (June 19, 1984) and *885 contested the assessor’s denial of its exemption and, further, filed a grievance pursuant to RPTL 512 and 524. The response of the respondents was to deny the grievance and direct the petitioner that its further recourse was to proceed with a RPTL article 7 proceeding, which it did. Having directed the procedure for petitioner to follow in seeking judicial review in this very unusual case, the respondent will not be heard to contest the petitioner’s obedience to its direction (see, Bender v New York City Health & Hosps. Corp., 38 NY2d 662, 668).
Having determined that the proceeding was properly and timely commenced, the merits of the petition may now be considered. It is petitioner’s position that the provisions of RPTL 490 require a determination that the subject property is exempt from the park assessment. That section provides, as is relevant, as follows: "Real property exempt from taxation pursuant to * * * section four hundred twenty-a * * * of this chapter shall also be exempt from special ad valorem levies and special assessments against real property located outside cities and villages for a special improvement or service or a special district improvement or service and special ad valorem levies and special assessments imposed by a county improvement district or district corporation”.
It is respondents’ position, however, that the language "imposed by a county improvement district or district corporation” at the end of the quoted portion of the section limits the application of the section to levies and special assessments imposed by a county improvement district or district corporation. Since the subject park district is neither, the argument follows, the section simply does not apply to petitioner. In my opinion, respondents have advanced a tortured and patently incorrect interpretation of the statutory language.
The repeat of the words "special ad valorem levies and special assessments” immediately prior to the words "imposed by a county improvement district or district corporation” make it clear that a second classification of districts is intended, this one not limited by the words "real property located outside cities and villages”, as was the first. In fact, this very issue has been addressed in an exhaustive and scholarly fashion by Counsel to the State Board of Equalization and Assessment, with a specific holding that RPTL 490 applies to town ad valorem levies (7 Opns Counsel SBEA No. 88 [Aug. 12, 1982]). The analysis contained therein is hereby adopted.
*886 The only remaining issue to be determined is whether factual issues exist so as to preclude summary judgment. Respondents allege that "[t]he self-serving and conclusory allegations of Sister Christine Marie do not sufficiently establish that petitioner’s use of the property is an exempt use. The property is used for a non-exempt purpose — 'a vacation rest home and retreat house’.” No authority is given for the proposition that an incidental nonexempt purpose will defeat the exemption or, for that matter, that use of the property as a rest home and retreat house for nuns in ^connection with their religious, educational and charitable activities are not exempt uses. In fact, the mere allegation that petitioner is a religious corporation whose tax-exempt status has been recognized by the Internal Revenue Service and whose property is used exclusively for religious, charitable and/or educational purposes is sufficient to create a presumption of entitlement to exemption under RPTL 420-a (Yeshiva Beth Yehuda V’Chaim D’Betlan v Town of Shandaken, 100 AD2d 641, 642). Further, and more significantly, the respondent assessor has already made a determination that petitioners are entitled to an exemption pursuant to RPTL 420-a for the subject tax years. He is estopped to now contest that determination.
Petitioner’s motion for summary judgment is granted, without costs. Respondents’ motion is in all respects denied.